**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Steve Wallach, et al., <br><br> Plaintiffs, <br><br> v. <br><br> Nicole Johnson, et al., <br><br> Defendants. | No. CV-19-04564-PHX-DJH <br><br> **ORDER** |

Before the Court is Plaintiffs' Motion for Default Judgment (Doc. 15). Defendant Nicole Johnson was served with the Complaint, Summons, and this Motion; however, she has not answered or otherwise appeared and did not respond to Plaintiffs' Motion.

**I.    BACKGROUND**

    **A.    <u>Plaintiffs' Allegations</u>**

Plaintiffs Dr. Joel Wallach ("Dr. Wallach"), Steve Wallach ("Mr. Wallach"), Michelle Wallach ("Ms. Wallach"), and Dave Briskie ("Mr. Briskie") initiated this action by filing a Complaint naming Nicole Johnson, and several John Does, as Defendants. (Doc. 1). Plaintiffs' Complaint contains two causes of action: (1) Defamation *Per Se* and (2) Defamation *Per Quod*. Plaintiffs are or have been affiliated with Youngevity, a publicly traded, multi-level marketing company that engages in the business of selling various health supplements through a network of independent distributors. Dr. Wallach is a resident of California and the founder of Youngevity, Mr. Wallach is a resident of California and is Youngevity's Chief Executive Officer, Ms. Wallach is a resident of

California and is Youngevity's Chief Operating Officer, and Mr. Briskie is a resident of Florida and is Youngevity's President and Chief Financial Officer.

In 2016, certain Youngevity executives and distributors left Youngevity to form a competing multi-level marketing company, Wakaya Perfection LLC ("Wakaya"). Wakaya sells its products through a network of distributors known as "Ambassadors." Defendant Johnson is a resident of Maryland and is a Wakaya Ambassador. On or about May 26, 2019, Defendant Johnson registered the website www.realmlmnews.com (the "Website") using GoDaddy.com LLC ("GoDaddy"). Defendant Johnson also used Domains by Proxy, LLC ("Domains by Proxy") to hide her identity as the owner and operator of the Website.[1] Both GoDaddy and Domains by Proxy, who are not parties to this action, maintain their principal place of business in Maricopa County, Arizona.

Plaintiffs allege that Defendant Johnson's Website contained defamatory statements about Plaintiffs. Specifically, Plaintiffs allege that the Website included the following defamatory statements under the heading "Youngevity Facts":

> (a) [Mr. Wallach] has managed to not only acquire the companies, but he duplicated their products, so he no longer has to pay royalties to the owners. After the company comes over, he does a bait and switch because he has their network.
> (b) [Mr.] Briskie is the master manipulator when it comes to [Youngevity] stock.
> (c) [Ms. Wallach] verbally abuses women and sexually harasses men. [Mr. Wallach] and [Ms. Wallach] paid off Chris Nelson the old CFO an undisclosed amount to keep him quiet. There are at least two other men besides Chris she has done inappropriate things to.
> (d) [Dr. Wallach] is big on sexually harassing the rep force.

(*Id.* ¶ 34; Doc. 1-2 at 4-7). Plaintiffs claim that all of these statements are false and were disseminated through the Website to third parties. Plaintiffs further allege that Defendant Johnson posted those statements with "actual malice" because she knew the statements were false or "offered those statements with reckless [dis]regard for the truth." (Doc. 1 ¶ 38). Additionally, Plaintiffs allege that they have suffered damages as a result of

---

[1] Domains by Proxy offers private website registrations so that the identity of the true owners and operators of a specific website are concealed from the public. Domains by Proxy appears as the registrant, rather than the individual, in public listings for that website.

defamatory statements on the Website.

### B. Procedural History

After filing the Complaint on June 26, 2019, Plaintiffs retained Monumental Process Servers, Inc. ("Monumental") to effect service of process on Defendant Johnson. Monumental attempted to serve Defendant Johnson at her Maryland home on June 27, June 30, July 1, and July 10. (Doc. 8). Monumental confirmed with Defendant Johnson's neighbor that she did in fact live at that address. Additionally, the Monumental process server left a note on Defendant's door during the June 27 and June 30 service attempts, which asked Defendant Johnson to call Monumental. On June 30, 2019, Defendant Johnson called Monumental and asked to be served the following day after 6:00 pm. Yet, when the process server returned after 6:00 pm on July 1, 2019, Defendant Johnson refused to answer the door and texted Monumental that she was not at home. Plaintiffs then retained a second company, Legal Process Servers LLC ("LPS"), to serve Defendant Johnson. LPS attempted to serve her on July 23, July 25, July 26, and July 27; however, LPS was unable to effect service. LPS then surveilled Defendant Johnson's home on July 28, 2019, from 6:00 am to 7:19 pm; however, Plaintiff did not exit the house during that time.

On August 7, 2019, Plaintiffs filed an *Ex-Parte* Motion to Serve Defendant Johnson by Alternative Means (Doc. 8). The Court granted Plaintiffs' Motion and ordered Plaintiffs to mail, via certified mail, the Complaint, Summons, and the Court's Order granting alternative service to Defendant Johnson's home and email her the same. (Doc. 9). On August 9, 2019, Plaintiffs mailed and emailed Defendant Johnson the Complaint, Summons, and the Court's Order. (Doc. 10). Defendant Johnson did not file an answer or otherwise appear, and therefore, on September 4, 2019, Plaintiffs filed an Application for Entry of Default. (Doc. 13). The Clerk of Court entered Default on September 5, 2019. (Doc. 14). On September 26, 2019, Plaintiffs filed the pending Motion for Default Judgment. (Doc. 15). Plaintiffs mailed and emailed Defendant Johnson a copy of this Motion; however, Defendant Johnson did not file a response. (Doc. 15-8).

## II. LEGAL STANDARD

Once a party's default has been entered, the district court has discretion to grant default judgment against that party. *See* Fed. R. Civ. P. 55(b)(2); *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). "When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999). In deciding whether to enter a default judgment, courts in the Ninth Circuit consider: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claims; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute about the material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *See Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). In applying these factors, known as the *Eitel* factors, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977).

## IV. DISCUSSION

Before assessing the merits of Plaintiffs' Motion for Default Judgment, the Court must confirm that it has personal jurisdiction over Defendant Johnson and subject matter jurisdiction over the case, as well as ensure the adequacy of service on Defendant Johnson.

### A. <u>Personal Jurisdiction</u>

"It is the plaintiff's burden to establish the court's personal jurisdiction over a defendant." *Donell v. Keppers*, 835 F. Supp. 2d 871, 876 (S.D. Cal. 2011) (default-judgment case) (quoting *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001)). "For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). A federal court sitting in diversity

borrows the long-arm jurisdictional statute of the forum state. *See, e.g.*, *Lake v. Lake*, 817 F.2d 1416, 1420 (9th Cir. 1987). Arizona's long-arm statute authorizes the exercise of personal jurisdiction on any basis that is consistent with the state or federal constitution. Ariz. R. Civ. P. 4.2(a); *A. Uberti & C. v. Leonardo*, 892 P.2d 1354, 1358 (Ariz. 1995). The personal-jurisdiction analysis thus collapses into a single inquiry under federal due process. *See, e.g.*, *Lake*, 817 F.2d at 1420.

Plaintiffs proffer two bases for personal jurisdiction over Defendant Johnson. (Doc. 15-1 at 10-13). First, Plaintiffs argue that Defendant Johnson consented to jurisdiction when she contracted with two Arizona companies, GoDaddy and Domains by Proxy, to register the Website because the contracts contained forum selection clauses. Second, Plaintiffs contend that Defendant Johnson had sufficient minimum contacts to support exercise of specific personal jurisdiction over her in this matter.

### *1.    Consent*

Defendant Johnson contracted with two Arizona companies, GoDaddy and Domains by Proxy, to register the Website and those contracts both contained forum selection clauses that required Defendant Johnson to litigate all disputes relating to or arising out of those contracts in Maricopa County, Arizona. Thus, Plaintiffs argue that pursuant to those contracts, Defendant Johnson consented to this Court's jurisdiction for all suits related to the Website, regardless of the suit's connection to the contracts or whether GoDaddy or Domains by Proxy are parties. (Doc. 15-1 at 8). The Court disagrees. Essentially, Plaintiffs are attempting to piggyback off of the forum selection clause contained in the contracts between Defendant Johnson and GoDaddy and Domains by Proxy, even though neither GoDaddy nor Domains by Proxy are parties to this suit and Plaintiffs are not parties to those contracts. The cases relied on by Plaintiffs to support this argument—*Craigslist, Inc. v. NatureMark, Inc.*, 694 F. Supp. 2d 1039, 1052–53 (N.D. Cal. 2010), *Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1086 (9th Cir. 2018), and *Dolin v. Facebook, Inc.*, 289 F. Supp. 3d 1153, 1161 (D. Haw. 2018)—are easily distinguishable from the facts here. Most notably, in all three cases cited, the parties to the

contract that contained the forum selection clause were also parties to the lawsuit, which is not the case here. Furthermore, the Court finds that there is not a logical or causal connection between this suit and the contracts between Defendant Johnson and GoDaddy and Domains by Proxy.

Plaintiffs provide no relevant authority, and the Court knows of none, that supports their argument that any person or entity that contracts with GoDaddy or Domains by Proxy to register a website consents to personal jurisdiction in Arizona for any suit involving that website. Accepting such an argument flouts the notion of consent. Accordingly, the Court finds that Defendant Johnson's consent to suit in Maricopa County for disputes relating to or arising out of the contracts between her and GoDaddy and Domains by Proxy does not give the Court personal jurisdiction over Defendant Johnson.

### *2. Specific Jurisdiction*

Alternatively, Plaintiffs contend that the Court may properly exercise specific personal jurisdiction over Defendant Johnson. Specific personal jurisdiction subjects a non-resident defendant to a court's power only for claims arising out of the defendant's activity in the forum state. *See Schwarzenegger*, 374 F.3d at 801-02. "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on 'the relationship among the defendant, the forum, and the litigation.'" *Walden v. Fiore*, 571 U.S. 277, 283 (2014). The Ninth Circuit uses a three-part test to analyze assertions of specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) The claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) The exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

*Id*. at 802 (citing *Lake*, 817 F.2d at 1421). A plaintiff bears the burden of satisfying the first two prongs of this test. *Id*. If the plaintiff fails to satisfy either prong, then personal

- 6 -

jurisdiction is not established. If the plaintiff satisfies both of the first two prongs, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476-78 (1985)). For the reasons that follow, the Court finds that Plaintiffs have not established specific personal jurisdiction.

### i. **Purposeful Direction**

The first prong of the specific jurisdiction test refers to both purposeful direction and purposeful availment. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011). In tort cases, such as this defamation action, the Ninth Circuit directs that a "purposeful direction" analysis under the three-part "effects" test be utilized. *Id.*; *see also Walden*, 571 U.S. at 286-89. Purposeful direction exists when a defendant commits an act outside the forum state that was intended to and does in fact cause injury within the forum state. *Calder v. Jones*, 465 U.S. 783, 788-89 (1984). Under the *Calder* "effects test," Defendant Johnson must have (1) committed an intentional act, (2) expressly aimed at Arizona, (3) causing harm that Defendant Johnson knows is likely to be suffered in Arizona. *See Mavrix Photo*, 647 F.3d at 1228.

### a. **Intentional Act**

As to the intentional-act requirement, the Ninth Circuit "construe[s] 'intent' . . . as referring to an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010) (quoting *Schwarzenegger*, 374 F.3d at 806). Plaintiffs allege that Defendant Johnson sought out an Arizona company to register the Website and then used that website to post defamatory statements about Plaintiffs. This is likely enough to satisfy the intentional act requirement. *See Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1020 (9th Cir. 2002) (finding that operating a website was intentional act); *eAdGear, Inc. v. Liu*, 2012 WL 2367805, at *6 (N.D. Cal. June 21, 2012) (finding that "[d]efendants committed an intentional act by operating their own website that posted statements about Plaintiff's business"), report and recommendation adopted,

2012 WL 4005454 (N.D. Cal. Sept. 11, 2012).

### b. **Express Aiming and Likely Harm**

Plaintiffs' allegations fail, however, over the last two requisites of the *Calder* test: "express aiming" toward and "likely harm" in the forum state. Express aiming entails something more than mere foreseeability. *See Brayton Purcell*, 606 F.3d at 1129. Express aiming exists "when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant *knows to be a resident of the forum state*." *CollegeSource, Inc. v. Academyone, Inc.*, 653 F.3d 1066, 1077 (9th Cir. 2011) (quotations and citations omitted) (emphasis added); *accord Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1087 (9th Cir. 2000). "The final element" under *Calder*—likely harm—"requires that [a defendant's] conduct caused harm that it *knew was likely to be suffered in the forum*." *Brayton Purcell*, 606 F.3d at 1131 (emphasis added).

These last elements thus both require that Defendant Johnson knew that her activity was directed toward, and would likely cause harm in, Arizona. Plaintiffs fall far short in alleging that Defendant Johnson knew these things. First, none of Plaintiffs are residents of Arizona. Aside from registering the Website using an Arizona company, there are no allegations that Defendant Johnson took any action aimed at Arizona. Notably, Plaintiffs are not alleging that the registration of the Website was in anyway nefarious; rather it was her *use* of the Website that is the crux of Plaintiffs' allegations and there is no evidence that Defendant Johnson's use of the Website was aimed at Arizona. Additionally, there is no evidence to suggest that Defendant Johnson should have known that Plaintiffs would experience harm in Arizona as no Plaintiff resides in Arizona. Without more positive, direct, concrete allegations that Defendant Johnson knew that her conduct was likely to cause harm in Arizona, Plaintiffs have failed to meet this part of the *Calder* test and so have not shown that Defendant Johnson has such minimum contacts with Arizona as would subject her to this Court's personal jurisdiction. Because Plaintiffs have not established these requisites, the Court does not reach the other elements of the specific personal jurisdictional analysis. Additionally, as the Court does not have personal jurisdiction over

Defendant Johnson, the Court will not address whether it has subject matter over the action or whether Defendant Johnson was properly served; nor will it embark upon *Eitel's* default-judgment analysis.

## V.     CONCLUSION

"When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties." *In re Tuli*, 172 F.3d at 712.  Here, "[t]he proper focus of the "minimum contacts" inquiry in intentional-tort cases is 'the relationship among the defendant, the forum, and the litigation.'"  *Walden*, 571 U.S. at 291 (2014) (quoting *Calder*, 465 U.S. at 788)).  Moreover, "it is the defendant, not the plaintiff or third parties, who must create contacts with the forum State." *Id.*  Plaintiffs here have not shown that this Court can exercise personal jurisdiction over Defendant Johnson and therefore the Court denies Plaintiffs' Motion for Default Judgment.  Furthermore, as the Court has determined that it does not have personal jurisdiction over Defendant Johnson, the only named defendant in this action, the Court will therefore dismiss the case in its entirety.  Accordingly,

**IT IS ORDERED** that Plaintiffs' Motion for Default Judgment (Doc. 15) is **DENIED**.

**IT IS FURTHER ORDERED** respectfully directing the Clerk of Court to terminate this action.

Dated this 7th day of October, 2019.

_____
Honorable Diane J. Humetewa
United States District Judge